All the judges concurred, except BROWN, J., who was absent.

Judgment affirmed.

---

## FARMERS' BANK OF WASHINGTON COUNTY *v.* COWAN.

### December, 1865.

An agreement between a mortgagor and mortgagee of chattels composing the stock of a foundry, that the mortgagor might remain in possession after default, and carry on the works as the agent of the mortgagee, and that the latter would apply the proceeds of sales of the manufactured articles to the payment of the mortgage debt, is not as matter of law fraudulent; and manufactured articles belong to the mortgagee and are not subject to levy and sale on execution against the mortgagee, unless fraud in fact is established.*

On the argument of an appeal, the court may allow a defect in record evidence to be supplied.

An objection to an improper answer, given to a proper question, must be taken by motion to strike out.

The Farmers' Bank of Washington County sued Hugh R. Cowan, for the conversion of personal property. The defense was that the property in question belonged to one Benjamin F. Woodruff, and that the defendant, as sheriff of Washington county, had seized and sold it on executions issued against him.

On the trial, it appeared that on December 1, 1856, Woodruff, the owner of the Mount Hope Iron Works, being indebted to Mallory & Co. of Troy (Mallory, Ingalls and Tibbetts), made a settlement with them, and gave them seven promissory notes of that date—one for upwards of seven thousand dollars, payable one day after date, and the others payable in a few months after date.

---

* See also Conkling *v.* Shelley, 28 *N. Y.* 360; Frost *v.* Warren, 42 *Id.* 204.

To secure the payment of these notes, Woodruff gave a chattel mortgage of all his personal property pertaining to the Mount Hope Iron Works, in which it was stipulated that in case of a default in payment of any part of the money, the mortgagees might enter on the premises where the property was, and carry away and sell the same, but until such entry and demand, Woodruff was to remain in possession of the property, but that his possession was to be deemed the possession of an agent or servant for the sole benefit of his principals, the mortgagees. This mortgage was dated on the first and filed on December 11.

On the same day that the notes and mortgage above mentioned were given, the parties entered into an agreement in which was recited the settlement, the indebtness, the making of the notes and the giving of the mortgage as a security,— and by it the parties agreed, that after that date, all outlays on account of the business of the iron works should be made in the name and for the benefit of Mallory & Co., and that all iron manufactured should be their property, and Woodruff agreed to work and manage the business until his indebtedness should be fully paid. Prior to this, and on May 27, 1856, a decree of foreclosure of a mortgage of real estate was entered in the supreme court, by which the real estate comprising the iron works, excepting one ore bed, was directed to be sold, and accordingly was sold and purchased by Mallory & Co. on September 30, 1856.

On December 19, 1857, Woodruff made to the plaintiffs two notes, to secure the payment of which Mallory & Co. made to the plaintiffs a bill of sale of eighty-five tons of iron then at the iron works, and agreed to deliver it at Fort Ann village, within three months thereafter. In accordance with this agreement, the iron was taken to the dock at Fort Ann, and the plaintiffs notified thereof, and afterward signified their acceptance of it.

On December 19, 1857, the same day that the bill of sale was made, the defendant, as sheriff, levied on the iron under an execution against Woodruff, at the suit of third persons, and subsequently, after the iron had been removed to Fort Ann, sold it.

Plaintiffs brought this action for the conversion of the property, and recovered judgment.

*The supreme court* at general term affirmed the judgment, upon the same grounds, as to the merits, as are stated in the opinion of this court.

The main points determined by the supreme court, besides the question on the merits, were,

1. That on the argument of an appeal, at general term, a defect in record evidence may be supplied.

On the trial, the court received in evidence the deed given on the mortgage foreclosure, without requiring the mortgage, the judgment of foreclosure, or other proceedings to authorize the giving of the deed to be shown and three of the four judges in the supreme court agreed that this defect could be supplied on the argument. See Markoe *v.* Aldrich, 1 *Abb. Pr.* 55. The other judge, without expressing any opinion on this point, thought the evidence was not necessary.

2. That where a question put to a witness is proper, and the answer improper,—*e. g.*, because hearsay,—a motion to strike out the answer is essential, before the case is submitted. If such motion be not made, an exception does not lie to the charge of the judge that the jury may consider such answer as part of the evidence. Compare Reddington *v.* Gilman, 1 *Bosw.* 235.

*James Gibson*, for defendant, appellant;—As to the validity of the mortgage and contract, cited Randall *v.* Parker, 3 *Sandf.* 73; Griswold *v.* Sheldon, 4 *N. Y*, (4 *Comst.*) 588; Darwin *v.* Handley, 3 *Yerg.* 504; Waterbury *v.* Sturtevant, 18 *Wend.* 361; Dunham *v.* Waterman, 17 *N. Y.* 9; Edgell *v.* Hart, 9 *N. Y.* (5 *Seld.*) 217; and 6 *Hill*, 438; 1 *E. D. Smith*, 445; 4 *N. Y.* (4 *Comst.*) 214, 581.

*John H. Reynolds*, for plaintiff, respondent.

CAMPBELL, J.—The answer of the defendant is, in brief, that the property mentioned in the complaint was not the property of the plaintiff, nor was the same in plaintiff's possession, but,

on the contrary, the property was owned and possessed by one Benjamin F. Woodruff; that the defendant was sheriff, and sundry executions came into his hands against the said Woodruff and others, and that, by one of his deputies, he caused the said property to be levied on and sold as the property of Woodruff. The two issues raised by the answer were: first, was Woodruff owner of the property levied on and sold? and, if not, second, did the property belong to the plaintiff, or was it in the possession of and under plaintiff's control? To these points the evidence on the trial was directed; and on both issues the jury found against the defendant.

The chattel mortgage given by Woodruff to Mallory, Ingalls and Tibbetts was, I think, in the usual and customary form. It was a sale of the property with a condition that it should be void on the payment of a specified amount of money as shown by certain promissory notes. In case of a default in payment of any part of the money, the mortgagees were empowered to enter on the premises where the property was, and to carry away and sell the same; but until such entry and demand made, Woodruff was to remain in possession of the property, and in the full and free enjoyment of the same, but with the further condition that, until such demand made, such possession was to be that of an agent for the sole benefit of his principals, the mortgagees. On looking at the notes which this mortgage was given to secure, it is seen that the largest note, being one for over seven thousand dollars, was made payable after one day, so that the default probably occurred almost immediately on execution, whereby the title at once vested in the mortgagees.

But though the title vested, there was not an absolute forfeiture. There was a right in equity, still remaining in Woodruff, to redeem. This, after default, was all the interest he had in the property, and was all in fact he could transfer even to a *bona fide* purchaser for full value,—though having the property in possession, he might transfer such possession, together with his right of redemption. But the mortgagees could at any time take the property out of the possession of such *bona fide* purchasers and sell the same. In case of sale, if there was a surplus after paying the mortgage debts, that would belong to the

mortgagor or his vendee or assigns. But after default, until such redemption or sale, the title is in the mortgagees. The interest of the mortgagor is identical, whether in case of redemption or sale; it is only what remains after the mortgage debt is paid, and that is all which the sheriff could levy on and sell.

But in this case, as may fairly be inferred, the furnace was running constantly, and, the mortgage having been given more than a year before the levy, it is not probable that any of the iron mortgaged remained on the premises and formed a part of that now in controversy. If any such iron remained, the sheriff could not sell it absolutely under executions against Woodruff. He could only sell Woodruff's interest, and the surplus remaining after payment of the mortgagee.

But, simultaneously with the execution of the chattel mortgage, a separate agreement was entered into between the mortgagor and mortgagee, by which it was further stipulated that the mortgagor might remain in possession and carry on the furnace as the agent of the mortgagees; the mortgagees were to furnish all the funds, and all the iron made was to belong to the mortgagees. Under this arrangement, the furnace had been carried on for more than a year before the arrangement made between the mortgagees and the plaintiff in this suit for the delivery of the iron in controversy. Certainly, as between the parties, such an arrangement as made between Mallory & Co. and Woodruff would be legal, and under it the title to the manufactured iron would be in Mallory & Co., and not in Woodruff. Though the proceeds of the sales, when received by Mallory & Co., were to be applied on the indebtedness of Woodruff to them, that would not affect the question of title to the property. Woodruff could sell the property as agent for Mallory & Co., but as between him and that firm, he was clearly not the owner. As against them, he could have no better title or claim to the manufactured iron than a stranger to the original transaction could have had, in the same position as agent;—that is, so long as the expenses of running the furnace and the original indebtedness to Mallory & Co. remained unpaid. The creditors of Woodruff could only assail the arrangements between him and Mallory & Co., on the ground that they were fraudulent in fact

as against them. This, the jury, on a full and fair submission of all the facts to them, have negatived. They found in effect · that the iron in question belonged to Mallory & Co., and not to Woodruff.

If the iron was the property of Mallory & Co., then there can be, I apprehend, no doubt or difficulty as to the other branch of the case.

By the agreement between the plaintiff and Mallory & Co., the iron was to be delivered on the dock. It was so delivered. As Woodruff had no title to the property, the previous levy under execution against him in no way affected Mallory & Co.'s rights. The plaintiff was notified, and accepted the iron. The weight and bulk of the iron was such that there could be no manual delivery. It was not necessary to go on the dock and make a formal proclamation. As against a trespasser,—for such the sheriff was, if Woodruff had no title,—it is very clear that the possession of the plaintiff was sufficient.

There were numerous exceptions on the trial, but they are all so fully and correctly considered in the court below, that I do not think it necessary to go over them.

I think this judgment should be affirmed.

All the judges concurred, except PORTER, J., and DENIO, Ch. J., who were for reversal.

Judgment affirmed.

